**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 16 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STACY F. LAULU,

Defendant-Appellant.

No.   15-30152

D.C. No.
3:13-cr-00092-RRB-5

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 2, 2016
Anchorage, Alaska

Before:  FISHER, PAEZ, and HURWITZ, Circuit Judges.

Stacy Laulu was convicted after a jury trial of two counts of wrongful disclosure of individually identifiable health information with intent to use that information for "personal gain, or malicious harm."  42 U.S.C. § 1320d-6(a)(3), (b)(3) (a felony violation of the Health Insurance Portability and Accountability Act ("HIPAA")).  A co-defendant, Stuart Seugasala, had brutally assaulted a man who

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

allegedly owed a confederate $50,000 for drugs. Two days later, Seugasala shot a second victim. He then contacted Laulu—a financial consultant at the hospital where the victims were treated—and asked about the victims' injuries and whether they had identified their attackers. Laulu accessed hospital records and provided information from those records to Seugasala, with whom Laulu's husband had previously been associated.

Laulu and Seugasala were tried jointly. In addition to the two felony HIPAA violation counts with which Laulu was charged, Seugasala was also charged with drug conspiracy, kidnapping, and use of a firearm in furtherance of drug trafficking. Laulu challenges the district court's admission against her of a video of the assault, which vividly depicted Seugasala forcibly sodomizing a bound and gagged victim with a hot curling iron while the victim begged for his life.[1] We conclude that the video should not have been admitted against Laulu, and that the government failed to meet its burden to establish harmlessness.[2]

---

[1] Seugasala had videotaped the assault to show others "what happens when people owe me money."

[2] The parties dispute whether Laulu objected only to the admission of the video or whether she objected generally to the admission of Seugasala's bad acts. Because we reverse on the admission of the video alone, we need not decide whether the district court erred by introducing the other evidence against Laulu without a proper limiting instruction. We express no view on the admissibility of that evidence, but expect the district court will exercise its discretion as usual under Federal Rules of Evidence 401 and 403 in light of this disposition when considering what evidence to admit at Laulu's new trial.

2

1.     Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a), (b). But, even relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . [or] misleading the jury." Fed. R. Evid. 403. The video at issue was singularly gruesome, and was admitted not only against Seugasala but also against Laulu. The district court found it relevant to "offer a coherent and comprehensible story regarding the commission of [the] crime."

2.     A felony HIPPA violation is established when a defendant "discloses individually identifiable health information to another person . . . with intent to sell, transfer, or use [that information for] . . . personal gain, or malicious harm." 42 U.S.C. § 1320d-6(a)(3), (b)(3). The only contested issue in the case against Laulu was whether she made the disclosures to Seugasala with the requisite statutory intent. Laulu was not involved in the sexual assault, and had neither seen the video nor knew of its existence. Because the video did not "go to any of the elements of the crime with which [Laulu] was charged, we must consider its probative value low." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005).

3.     "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *Id.* at 1098 (citation omitted). "Unfair

3

prejudice" "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Given the grisly and violent nature of the videotape—which an experienced probation officer testified he was "still disturbed by" over a year and a half after viewing it—its introduction against Laulu "very well could have triggered an emotional response from the jury members," *Gonzalez-Flores*, 418 F.3d at 1099, and encouraged them to convict Laulu based on her association with Seugasala instead of on the facts related to the HIPAA charges. This risk was exacerbated by the government's repeated invitations to the jury to connect Laulu to Seugasala's brutal conduct. *See id.* The district court's instruction that the jury should "disregard[] any evidence admitted solely against another defendant" did not cure the risk of prejudice against Laulu because the video was not admitted solely against Seugasala.

4. "We must reverse unless there is a fair assurance of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales*, 108 F.3d 1031, 1040 (9th Cir. 1997) (en banc) (citation and quotation marks omitted). "The burden to show the harmlessness of the error is on the government." *Gonzalez-Flores*, 418 F.3d at 1099. The government does not advance a harmless error argument; it instead contends that the tape was properly admitted against Laulu. "If the harmlessness of the error

4

is at all debatable, prudence and fairness to the defendant counsel against deeming that error harmless without the benefit of the parties' debate." *Id.* at 1101. Here, Laulu's sole defense to the charges against her was that she lacked the requisite intent. In support, she offered her statements to investigators and the testimony of witnesses on cross-examination that Seugasala had been giving Laulu money for a year before the HIPAA violations. The government conceded at closing argument there was no quid pro quo agreement underlying Laulu's disclosure of the victims' medical information. But for the introduction of the video, the jury may have believed Laulu's claim she disclosed the victims' medical information to Seugasala as a favor, without the intent to personally gain or cause malicious harm to the victims.[3] We therefore vacate Laulu's conviction and remand for a new trial.

**VACATED and REMANDED.**

---

[3] The government argues the video was not more prejudicial than other evidence of Seugasala's acts admitted against Laulu. Even if we construe this as an argument any error was harmless, the government's burden means that when we "find ourselves in equipoise as to the harmlessness of the error, reversal is required." *Gonzalez-Florez*, 418 F.3d at 1099.